Good morning, your honors. My name is David Ornfeld. I'm here to present the argument of Annaphalia Peltz. Thank you for your time and consideration, first and foremost. The primary issue I think here is, number one, that we have a very low threshold in terms of whether stating states did not notice stating states' facts upon which worthy can be granted. I think when you look at this particular set situation through that prism, we have a whole host of facts in which, independently, you can lean to the relief under this complaint. And I think that the district court failed to take into consideration the facts that were being provided as opposed to an underlying theme that these are disgruntled investors who are seeking their money back from somebody who is not responsible for the loss. So let me talk about that in particular. It's alleged, and I think that facts regarding what Pearson admitted to later on about the investments show that Pearson was a disqualified individual from the inception of these investments, and that the defendants and all of them knew this not only because of their intimate involvement. Remember, he was a franchisee of the parent company, but also because they did their own internal investigation regarding the investments that he was going to put this to. And if they transfer the money directly to his account, it's a specific violation. So the question becomes, and I'm going to concede for the purposes of this particular argument, this portion of the argument, that the arguments are disheartening. But we have a contractual relationship that has a feature of trust and confidence, and I think we certainly have that here because these are custodians. I mean, I think you used the term custodian, and it's useful to explain this context, but if you use the term custodial and position it in any other context,  and the trust and care arising from this contractual part of the situation should have led the defendants to expose to these parties that they are investing with a disqualified investor, and they didn't do that. I think that the common law regarding the concealment of fact is compelling, that they should have made that disclosure at the inception. And if, in fact, the court agrees with that, that would make, potentially, them viable for the entire investment itself. Your time is going quickly, and I think there's a lot of detail in here. I would really like to get to some questions about statute of limitations, and I'd also like you to get to the question as to whether Ms. White is elderly. Okay, well, she is elderly. My reasoning is that she's elderly. She's not elderly as of the time that the fraud was perpetrated. Your Honor, I was going to get to this argument independently, but let's just take it now with respect to the statute of limitations. You recall in the pleading that she has a phone call with the actual defendant, Mr. Brahma, who was an executive at this company, and he tells her, hey, you know what, there's nothing we can do about the reporting of your asset at a value other than zero. There's nothing we can do about it, and we rely on what Mr. Pearson tells us. Well, that's absolutely incontrovertible. What the IRS code says is that the custodian has the duty to go out and find the valuation of the asset. And, in fact, during that conversation, which I believe was my year, I believe that was 2013, and it was shortly before the pleading was filed, if my memory serves me correctly, but it was certainly within three years And at that point in time, they continue from that point forward on an asset that they know is valued at zero, and how much in 2013. And, Your Honor, I don't have the specific answer to that question. In the pleading, I know that a complaint was filed. The complaint was filed in March of 2013, and she was caught in the 65s. Your Honor, it's really not an issue. I was really focused on the concealment aspect of the complaint, and that's where I think that, in the broadest sense, what the test underneath was provides a basis for the monetary relief and a claim upon which relief can be granted. And the fact that they continued to send out statements, not only under a case, but also in Mr. Moransky's, it's a continuing tort, and it's a continuing tort that is based materially on a breach of the IRS Code, but also the mere fact that Rahma is telling her there's nothing we can do about this is a misrepresentation. It's a concealment effect, and it's something that, there's two aspects of this in terms of the way I see it. There's two aspects of what this concealment gives rise to. Number one, it gives rise to a continuing obligation on the part of interest to do something. And number two, it gives them the right to select teams. I don't think we really need you to come down the ladder, but, Mr. Reddick, you're dealing at a very, very high level, and I need you to be very, very specific. So we have two clients who are here before us today, Mr. Moran and Ms. Blunt. They have slightly different circumstances in terms of when they invested with Mr. Pearson. And so if you're going to talk about a fraud question, we have a three-year statute of limitations. I need you to be very specific, please, and tell me why Mr. Moran filed this fraud. Why can't he? I need you to turn to the RICO questions and deal with some similar questions there. Well, Your Honor, with respect to Mr. Moran, the allegations regarding his interactions with me, with the company, are at pages 126 and 127 of the excerpts. And there he contacts... He files a complaint in 2013. You have a three-year statute of limitations. That is correct. And in mid-2011, each time after receiving it, this is paragraph 183 on page 34 of the complaint, page 126 of the excerpt, that in mid-2011, after receiving information from MidSouth, which is the franchising and intros, he calls up and says, number one, finds out that Pearson is no longer with the company. But that's... There's a lot of arguments. This is not the basis on which the district court dismissed your complaint. The district court said that he knew as of 2008. The question is not how late did he know. The question is how early did he know. No, no, no, Your Honor, that's a different issue. With due respect, that's a different issue. That's an issue that goes to whether the trust can be tagged with the entire investment. The continuing fraud on the part of intros is that after they know that the investment is worth zero, they continue to send out statements that show the value at a different market value, and they continue to collect fees for the management of an account that is all but dead. And the only reason it's kept alive is for them to charge our clients money. And that's the basis for the concealment claim, it's two prongs, Your Honor. The first prong goes to attacking the whole investment itself. The second prong, and it's on the ledge, and the complaint is a separate form of injury, which is the continuing obligation on their part to accurately report the value. And once they've reported the actual value, if they had done it in a timely fashion, the contract would have been terminated, and their ability to collect fees would have ceased. But instead, they kept the ruse going solely for the purpose of collecting the fees, and that's the basis for that portion of the damage point. So even if you reject the portion of the claim that relates to the investment liability, you still have a portion of the complaint that relates to their ongoing duty to record the accurate value, and the fact that they did not do so, and they continue to do not do so, it's a continuing tort. They continue to conceal it. At least within three years of the filing of the complaint, you might have a statute of limitations in this situation that bars you from going back beyond three years to collect damages for what occurred before that three-year period, but clearly within three years of the filing of the complaint and forward. In fact, you have a company that is not sending out false information and specifically charging a fee-based component. And I did this my time as running out. This is kind of a secondary issue with respect to whether they are fiduciaries. They clearly disavow that in every written document and, you know, multiple times in multiple places. So there's no doubt that they are aware of what the ramifications of being a fiduciary are. Well, they're not so aware, because if I read Obstuch's statement, I cleared it. In the California Bill of 1985, it says, Even in the case of a special relationship, once a plaintiff becomes aware of facts which would make a reasonably prudent plaintiff person suspicious, the duty to investigate arises, and the plaintiff may then be charged with knowledge of the facts which he could have discovered by such an investigation. And so in that case, even with a special relationship, he has three years from the time where a reasonably prudent person would have been suspicious, even with the relationship. So if I look at that, then I'm going to want to judge my views again. But, Your Honor, with all due respect, I don't think that applies to this continuing obligation to sit on the Fair Market Bill. Remember, drama tells why, specifically. I can't do anything about that. We rely on the evaluations that are given by Pearson. Well, but just admit it. If a note is in default due to nonpayment, he's called to find out what the deal is all about then. If he's received no financial information about the paying entity, then he calls and finds out nothing about it. If the investment statement still accurately reflects what's in the account, and all of this is happening, it's hard for me to say that a reasonably prudent person isn't suspicious. Your Honor, but that's not the point. The point is, that's what the case says. When this reasonably prudent person is suspicious, the duty arises. That goes to the issue of underlying investment. It's about their continued duty to provide an accurate valuation. But in your mind, this is a continuing tort. So even if you're suspicious, even if you ought to do something about it, the very fact that it continues makes it such that you get three years in any event. Is that your argument? Your Honor, first off, I just like to think that your statement pretty simply has a false premise. Well, I don't think it's a false premise, given what I know, where I am new, and what happened. I mean, his promissory note was even unsigned, and the due date was left blank. Not left blank. And then he doesn't get the investment statements. In my book, special relationship or not, reasonable prudent person has to do something about it. The only way you're going to convince me is to say the three-year statute, because it continues, he gets another three years every time. And I want to know what case says that. Well, your Honor, there's plenty of cases. I don't know if I'm right here, but in California... I don't think I'll have them in your brief either. Well, look, I mean, everybody's familiar with the concept of a continuing tort. I understand that, but you've got to believe it. And I hear... I don't see it in your brief in any place. Your Honor, I think we've pled a continuous tort because we've pled that in 2011, as to Moran, and in 2013, as to White. They're in contact with a trust, and they're telling them, we can't do anything about devaluation. Your accounts statements are going to remain the same, and you're going to continue to be charged. They have a credit card to charge it. So, that's the condom. That is the continuing tort. Now, you could argue about notice, finishery duties, concealment, everything else has to do with the original investment. But if you have individuals and a company that no one is sending out false statements upon which they are bid, extracting is keen. That's a continuing tort. And when both clients contact them, and they say, I can't do anything about it, we rely on Pearson to give us the valuations, which they know is bogus. And they know Pearson's upside down. I mean, Pearson, they say, him, Scott, who put the money, he says he's going to sell off assets to pay back the debtors. So, the situation here is, can't you know it? Can't you knowingly send out statements knowing that they're false, and charge a fee upon them? That's the issue. Thank you. We'll go to the other side. May it please the Court, my name is Martin Turner, and I'm here as counsel for defendants in the interest group, and Hugh Rowan. Your Honors, you know, when I step back from this case, it has always been one of confusion, as one tried to discern what's really at issue in the pleadings. This comes with a backdrop, as I'm sure your Honors know, that this is one, this is the last of a trio of punitive class action cases brought against my clients. As submitted to the Court, that motions to dismiss were granted in the North District of California, in the Precinct case, and affirmed by the Ninth Circuit. Just last year, there was a first minute complaint filed there, and then a motion denied to file a second. I just want to clarify, who was who's complaint? Your Honor, I'll move on, Your Honor, but my point is, is that there have been nine pleadings, that I count, over three cases. This is the last of the cases, or the last of the pleadings, that do not stand a claim against my clients, and for counsel to come today and invent a new theory, not argued or planned, but nonetheless, in this case, is a new theory. And a new theory that you're arguing as well? A continuing fraud to somehow beat a clear statute of limitations does not stand a claim against my clients. As always, there was a claim that the plaintiff was issuing statements that showed a value that wasn't there in the punitive case, or? True, they did assert that these statements were essentially unchanged, and, Your Honor, both the contracts, the bi-directional under the account agreement, in this case, require to not impose any duty on my clients, the entities who are record keepers and administrators, purely relying only on the information that they receive. They have no duty whatsoever to go out and discern what the real information or value actually is. And, in fact, Your Honor, we cited this in our brief, there's a SEC guidance issued in 2011, not that it was available to either plaintiffs in this case at the time, but it makes very clear that how typical and common and normal it is in the self-directed IRA industry that self-directed IRA custodians are responsible only for holding and administering assets. They are not responsible for evaluating the quality or legitimacy of an investment. Most custodial agreements, self-directed custodial agreements and administration agreements, they explicitly state, explicit, at least in part, we also do, that the custodian and administrator have no responsibility for investment performance. And to get to your point, Your Honor, may I quote here from page two of this guidance? It said, SEC says, quote, as a result, self-directed IRA custodians often list the value of the investment as the original purchase price, the original purchase plus returns reported by the promoter, or a price provided by the promoter. Then in italics it goes on to say, investors should be aware that none of these valuations necessarily reflect the price at which the investment could be sold, if at all. There is no question that it is unfortunate that these... I have to tell you that the investor was worth nothing at that point and your clients knew it. And you realize, since I'm sorting out accounts, I can't charge you fees for non-existing assets. Well, Your Honor, the claims were time-barred at the outset. And Your Honor, the contracts here, as well as the case law that we've cited, make clear that there is no duty for my clients to change the account statements or go out and make independent inquiry. They rely only on the specific information that they receive. It could be from the promoter. It could be from the investor themselves. Your view is that even if your clients knew their assets were worth, as you can see, on balance in the account, they could just continue to charge you fees for... under the structure of disarrangement under the contracts here, under the norms in the industry, as the SEC has overviewed over the years. Your Honor, the answer is that our client had no duty to change those statements independently. They could charge fees whenever you told them that there was no value in the assets. They could. They could. If there was a... For example, if there was a breaker and there was none, and the account holder wrote to them and said, change the value on my accounts, then it might be a different thing. But the underlying cause of this investment loss was the fraud promoter who has already sustained a default judgment in this case and the damage was done shortly after the investments were made in the mid-2000s. If I may, Your Honors, I do wish to apologize for something and make a request. In the reply brief of the announcement, they make much of a SEC cease-and-desist order and put forth many pages of the charge showing how their allegations are similarly to those of the SEC cease-and-desist order. We are in preparation for this argument, Your Honors, that in June 27, 2016, in that very matter involving Equity Trust Company, that there was a written decision issued by the Administrative Law Judge of the SEC absolving Equity Trust Company of all the wrongs that were alleged in that matter. And I would like to leave the Court to file a copy of this under Rule 28, absolving this argument. Thank you, Your Honor. Thank you. What do you think about the elder claims? The elder claims, it's clear that Ms. I agree with you, and I'd like to read between the lines that Ms. White was not 65 years old when she made the investment. The cases we cited are clear that the standing required by the California statute is that one must be 65 years of age at the time that the investment was made. And that is dispositive on that claim, Your Honor. Do you have any other legal questions? Certainly, other legal questions. It's hard to add anything more than The court below instructed after dismissing the First Amendment complaint and permitting the elder claim of use. And your RICO claims to survive for possible further amendment made very clear that there needed to be a very specific following of Ninth Circuit and other law around the country that the alleged RICO person must be separate and distinct from the alleged RICO enterprise. The common feeling in all of the pleadings in this case is reflected in the other cases that we have seen come and go against my clients brought by the Missouri Plaintiffs' Council is that the complaint is a style of lumping all defendants together and trying to make them all responsible for the same thing and all acting in concert and doing the same things all the time. And the RICO statute requires much more specificity than it interacts with any other abuse statute. It demands a similar requirement that the specific wrongs of each specific defendant must be alleged. And frankly, I always viewed the RICO claim as a wire-added claim from these plaintiffs and it's because they had a fraud claim. If they had something actual here, it was in a fraud claim and clearly, it is time-burdened. Thank you. Thank you, Your Honor. Your Honor, at this time, if I could speak on this for a moment. Yes, please. Your Honor, with respect to this issue on the concealment and possession limitations, I think it's preposterous for this interest to take the position that it can knowingly send out invoices with false values and charge a fee associated with them. In 2009, Mr. Roma became aware of this view and he allowed his company to continue to send out invoices and charge fees based on a knowingly false amount. And the IRS code, and it's alleged that the complaint in paragraph 22, subparagraph E, sets forth that it's the duty on the part of the custodian to go out and seek the value. They disavow that obligation in their contract but they can't supersede what the law or the regulations require. And then lastly, Ms. White inquired of Mr. Brahma in 2013 about why her statement still continued to reflect this amount and he said there's nothing we can do about it. So it was clearly a situation where there is a continuing tort. But at that point, she knows that the statements are false, right? Certainly. How long does she know that they're false? Arguably from 2009. And 2009 would include three years before those. That's outside the statute of limitations. Well, Your Honor, the statute of limitations is the way I view the statute of limitations in this case. Is there operating under a continued, we have a custodian that's sending them documents that are written by the IRS. But they're not fooled by anybody, are they? They're not being fooled by the municipalities. She knows that the statements are false. She's known that for quite some time. They're just being recalled. In the case, right? That's right. Why did she file the case when she first realized there was a problem? Well, Your Honor, she's in contact with them in 2011 trying to get it reduced. I mean, it's not like she's sitting down doing nothing. She contacts Brahma. She contacts the assistant secretary. It is a matter of all the things she did otherwise. It's a matter of if she knows of her problem and she doesn't go to court and do anything about it, she loses. Well, Your Honor, not when there's a continuing tort. When there's a continuing tort, it's that confrontation where there's every day the tort occurs. And I think that's the situation you have here. And I think it's played. The facts show it. And the law allows that type of claim to be made. Thank you. Thank you.
judges: Kozinski, Bybee, N.R. Smith